## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | | |
|---|---|---|
| **Brooklyn Larice Poston,** | ) | **Civil Action No.:** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **v.** | ) | |
| | ) | |
| **Anderson Brothers Bank,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1.      This is an action brought by Plaintiff, Brooklyn Larice Poston, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., (hereinafter "FCRA") and South Carolina common law.

2.      The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.      Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

4.      To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including § 1681s-2(b) which is one of the cornerstone provisions of the FCRA.

5.      One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6.    The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

7.    This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p and 28 U.S.C. §1331 and §1332.

8.    Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

## PARTIES

9.    Plaintiff, Brooklyn Larice Poston, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10.    Defendant Anderson Brothers Bank ("ABB") is a South Carolina company registered to do business in South Carolina with the South Carolina Secretary of State.  Defendant may be

served with process through its registered agent for service of process, Dean Goewey, 101 N. Main St., Mullins, SC 29574.  At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

## FACTUAL ALLEGATIONS

11.    On or about July 19, 2019, Defendant ABB brought a collection action against Plaintiff. Plaintiff filed an Answer disputing all liability on the alleged debt and asserted a counterclaim against Defendant.

12.    Thereafter, the parties entered into an agreement which resolved the entire collection action and counterclaims.  This agreement specifically provided, *inter alia*, that ABB would instruct the credit reporting agencies to delete the tradeline relating to the collection action account and that ABB would cease reporting same to Plaintiff's credit.

13.    On or about September 10, 2021, the parties filed a joint stipulation of dismissal, which dismissed the collection action with prejudice.

14.    On or about February 7, 2022, Plaintiff obtained a copy of his Equifax credit report online. Upon review, Plaintiff learned that Defendant was wrongfully reporting the Anderson Brothers Bank account, with account number ending 6144 ("Account"), on his Equifax credit report. Furthermore, Defendant was reporting the Account as a derogatory, charged-off account with a past due balance of $160,224, and wasn't even reporting the Account as disputed.

15.    On or about February 15, 2022, Plaintiff sent a written dispute letter to Equifax via certified mail ("First Dispute"), in which Plaintiff stated that the Account was being incorrectly reported as a charge-off. Plaintiff stated that the Account was involved in litigation and based on the resolution of that litigation, the Account was to be deleted from Plaintiff's credit report. Plaintiff stated that the Account was inaccurately reporting and that it was severely impacting Plaintiff's credit.

Plaintiff included his name, address, date of birth, and Social Security number with his letter. Plaintiff specifically stated that he would provide any additional information that was needed to investigate his dispute upon request. On or about March 3, 2022, Equifax received Plaintiff's First Dispute and, upon information and belief, forwarded same to Defendant.

16.     Plaintiff did not receive a response to his First Dispute.

17.     On April 29, 2022, Plaintiff sent a second dispute letter to Equifax via certified mail ("Second Dispute"), in which Plaintiff stated that he never received a response to his February 15, 2022 dispute. Plaintiff stated that the Account continued to be inaccurately reported on his credit report and that the Account was involved in litigation and based on the resolution of that litigation, the Account was to be deleted from Plaintiff's credit report. Plaintiff stated that the Account was inaccurately reporting and that it was severely impacting Plaintiff's credit. Plaintiff included a copy of his First Dispute. Additionally, Plaintiff included his name, address, date of birth, and Social Security number with his letter. Plaintiff specifically stated that he would provide any additional information that was needed to investigate his dispute upon request. On or about May 2, 2022, Equifax received Plaintiff's Second Dispute and, upon information and belief, forwarded same to Defendant.

18.     Plaintiff never received a response to his Second Dispute.

19.     On or about October 9, 2022, Plaintiff requested and received a copy of his Equifax credit report which showed that Defendant was continuing to wrongfully report the Account on Plaintiff's Equifax credit report, that the Account was being reported as charged off with a past due balance of $160,224, and that Defendant was not reporting the account as disputed.

20.     On or about October 14, 2022, Plaintiff sent a third dispute letter to Equifax via certified mail ("Third Dispute"), in which Plaintiff again stated that he had obtained a copy of his Equifax

credit report and that the Account continued to be incorrectly reported as a charge-off with a past due balance of over $160,000.00. Plaintiff again stated that the Account had been involved in litigation and was to be deleted from his credit report. Plaintiff stated that the Account was inaccurate and severely impacting Plaintiff's credit rating and credit score. On or about October 18, 2022, Equifax received Plaintiff's Third Dispute and forwarded same to Defendant.

21.    On or about November 2, 2022, Equifax sent Plaintiff the results of its alleged investigation into Plaintiff's Third Dispute. In these results, Equifax notified Plaintiff that Defendant had verified the Account reporting was accurate. As a result, Equifax continued to report the Account to Plaintiff's Equifax credit report and also continued to incorrectly report the Account as a charged-off account with a past due balance of $160,224.

22.    On or about November 22, 2022, Plaintiff sent a fourth dispute letter to Equifax via certified mail ("Fourth Dispute"), in which Plaintiff again stated that he had received its alleged investigation into his Third Dispute and reiterated that he owed nothing on the Account. With this letter, he provided a copy of the dismissal of the collection lawsuit brought by Defendant.  Plaintiff also specifically requested that Equifax forward him a copy of each and every document it had received from Defendant to support Defendant's response that the Account should continue to be reported on Plaintiff's Equifax credit report. Equifax received Plaintiff's Fourth Dispute and forwarded same to Defendant.

23.    On or about December 6, 2022, Equifax sent Plaintiff the results of its alleged investigation into Plaintiff's Fourth Dispute, in which Equifax stated that Defendant had verified its reporting of the Account.  As a result, the Account continued to be wrongfully reported as a charged-off account with a balance due of $160,224. Additionally, Defendant never noted the account as disputed.

24.    During the time Defendant wrongfully reported the Account to Plaintiff's Equifax credit report, Plaintiff's Equifax credit report has been accessed and viewed by multiple third parties. These third parties include, but are not limited to, Capital One and CitiBank.

25.    On or about November 22, 2022, Plaintiff applied for a Capital One credit card and was denied same.

26.    On or about April 4, 2023, as required by the parties' settlement agreement, Plaintiff, by way of counsel, sent correspondence to Defendant, by way of its counsel of record in the collection action, in which Plaintiff stated that the Account was being wrongfully reported to his Equifax credit report. With his letter, Plaintiff included a copy of his Equifax credit report which showed the Account being incorrectly reported.

27.    In response, Plaintiff received confirmation from Defendant that it had received his April 4, 2023 letter. Defendant promised that it would follow up and would be in touch with Plaintiff once further information was received. To date, no such follow up has occurred.

28.    To date, Defendant continues to inaccurately report the Account on Plaintiff's credit file as a charged-off Account with a past due balance in excess of $160,000. As a result, Plaintiff continues to suffer harm to his credit and credit reputation, be placed in a false light, be denied credit, and suffer other damages.

### COUNT ONE
### (Fair Credit Reporting Act)

29.    The Plaintiff adopts the averments and allegations of paragraphs 11 through 28 hereinbefore as if fully set forth herein.

30.    Defendant violated 15 U.S.C. §1681s-2(b) by failing to investigate the accuracy of the information reported by the Defendant to the consumer reporting agencies.

31.    On at least one occasion within the past two years, by example only and without limitation,

Defendant violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate after receiving notice that the Plaintiff disputed the information said Defendant had provided to a consumer reporting agency.

32.    On at least one occasion within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

33.    As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to: damage to reputation and credit reputation, denial of credit, lost credit opportunities, family discord, embarrassment, humiliation, frustration, anxiety, loss of sleep, worry, physical sickness and pain, and mental anguish.

34.    The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a consumer reporting agency.

35.    The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

36.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees from Defendant in an amount to be determined by a jury pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT TWO
### (Fair Credit Reporting Act)

37.    The Plaintiff adopts the averments and allegations of paragraphs 11 through 36 hereinbefore as if fully set forth herein.

38.    On one or more occasions within the past two years, by example only and without

limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) and (D) by publishing the Defendant's inaccuracies within Plaintiff's credit files with the credit reporting agencies by failing to correctly report results of an accurate investigation to each credit reporting agency.

39.    Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to at least one consumer reporting agency.

40.    Defendant violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Account the subject of this action was inaccurate, incomplete, false, and misleading.

41.    As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: damage to his credit and credit reputation, denial of credit, lost credit opportunities, and incurred out of pocket losses.  Additionally, Plaintiff suffered humiliation, family discord, anxiety, loss of sleep, frustration, worry, physical sickness and pain, and mental anguish, as well as damages for attorneys' fees.

42.    The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1681n.  In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

43.    The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorneys' fees, pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT THREE
### (Breach of Contract)

44.    The Plaintiff adopts the averments and allegations of paragraphs 11 through 43 hereinbefore as if fully set forth herein.

45.    An express contract existed between Defendant and Plaintiff when the parties entered into a settlement agreement to resolve the collection action and counterclaims.

46.    The contract has been performed by Plaintiff as required.

47.    Defendant has refused to perform without legal excuse.

48.    The actions of Defendant constitute a breach of the aforementioned contract.

49.    As a consequence of Defendant's breach of contract, Plaintiff has suffered injuries that may be recovered by way of a judgment for the recovery of contract damages against Defendant.

## COUNT FOUR
### (Breach of Implied Duty of Good Faith)

50.    The Plaintiff adopts the averments and allegations of paragraphs 11 through 49 hereinbefore as if fully set forth herein.

51.    Plaintiff would show that implied in the parties' agreement was a covenant of good faith and fair dealing.

52.    In violation of that covenant, Defendant failed to honor the promises contained in the agreement.

53.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered substantial damages.

54.    Judgment should be granted to Plaintiff for actual and punitive damages, together with attorneys' fees and costs, in an amount to be determined by the trier of fact.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.    A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorneys' fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3)

and/or 15 U.S.C. §1681o(a)(2);

D.      Actual and punitive damages, where available, and attorneys' fees and costs, where

available, for Defendants' violations of South Carolina common law; and

E.      For such other and further relief as the Court may deem just and proper

                                        _/s/ Penny Hays Cauley_____
                                        Penny Hays Cauley, Fed.  ID No.  10323

                                        _/s/ William K. Geddings_____
                                        William K. Geddings, Fed.  ID No. 12584
                                        Attorneys for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

                                        _/s/ Penny Hays Cauley_____
                                        Of Counsel

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL**

Anderson Brothers Bank
c/o Dean Goewey – Registered Agent
101 N. Main St.
Mullins, SC 29574